1
2
3
4
5              **UNITED STATES DISTRICT COURT**
6                    **DISTRICT OF NEVADA**
7    ELISANDRO MENDOZA,
8           *Petitioner*,                    3:10-cv-00545-LRH-WGC
9    vs.
                                             ORDER
10   LEGRAND, *et al.*,
11          *Respondents*.
12

13         This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on respondents'

14   motion (#33) to dismiss.  Respondents seek dismissal of the amended petition on, *inter alia,* the basis

15   that the petition is time-barred under the federal one-year limitation period in 28 U.S.C. § 2244(d)(1).

16   Petitioner also has filed a motion (#25) for leave to conduct discovery, but, as discussed *infra,*

17   resolution of the timeliness issue does not turn upon the discovery sought.  Petitioner seeks, *inter alia*,

18   to establish a basis for equitable tolling overcoming the untimeliness of the petition based upon defense

19   counsel's alleged "abandonment" of him with regard to direct appeal and state post-conviction

20   remedies.

21                               ***Background***

22         Petitioner Elisandro Mendoza challenges his 2007 Nevada state court conviction, pursuant to

23   a guilty plea, of sexual assault.[1]

24         Prior to his plea, petitioner had been charged by November 30, 2006, and June 12, 2007,

25   criminal complaints collectively with sexual assault of a child under the age of 16 years, attempted

26   ─────────────────

27         [1]Indexed chronological state court record exhibits corresponding to the procedural recital herein may be found
28   at ## 26-30 & 36.  The Court in the main dispenses with making specific record cites herein as to procedural background
     that is essentially undisputed and/or is readily confirmed from the chronologically-indexed state court record exhibits.

sexual assault of a child under the age of 16 years, and possession of a short-barreled shotgun.  At the time of the November 3, 2006, offense:  (a) conviction on the first charge, a category A felony, would result in a sentence of life with eligibility for parole beginning after 20 years; (b) conviction on the second charge  for attempt carried an exposure of a minimum of 2 years and a maximum of 20 years; and (c) conviction on the third charge carried an exposure of a minimum of 1 year and a maximum of 5 years.[2]  Allowing for the possibility of consecutive imposition of maximum sentences on the three charges, the then 44-year old Mendoza faced a potential sentence structure if convicted on all three charges under which he could be incarcerated for over three decades before being considered for a parole outside an institution.

On September 4, 2007, Mendoza entered a guilty plea pursuant to a plea bargain to sexual assault, without the proviso that the victim was a child under 16.  The mandatory sentence for that offense was a sentence of life with eligibility for parole after 10 years.

Petitioner signed a guilty plea agreement, and he pled guilty to the offense.  The colloquy, however, shared characteristics with a colloquy for an *Alford* plea.  Mendoza did not admit guilt, but he acknowledged that the State would be able to prove its case on the more serious charges as to which he was avoiding trial by virtue of the plea.  The state court sought to confirm for the record that the plea was entered knowingly, intelligently and voluntarily.  The State further made a detailed proffer of the evidence that would have been introduced had the matter gone to trial.[3]

The State's proffer reflects that the prosecution would have presented evidence seeking to establish, *inter alia*, the following if the case had gone to trial.[4]  At the relevant time, the 15 year-old L.M. was residing with her grandmother in a trailer.  Mendoza, who is L.M.'s uncle, came to visit from California and stayed the night.  At some point during the night after L.M. had gone to bed, Mendoza came into her room, turned the light on briefly, and showed her what appeared to be a handgun.

---

[2]N.R.S. 200.366(1) & (3)(b)(prior to 2007 amendment); N.R.S. 193.330(1)(a)(1); N.R.S. 202.275; N.R.S. 193.130(d).

[3]#27, Ex. 34, at 4-21.  The plea in *Alford* was a guilty plea.  *North Carolina v. Alford*, 400 U.S. 25 (1970).

[4]In describing the State's proffer, the Court makes no findings of fact.  It simply is summarizing the factual assertions made in the State's proffer.

1    Mendoza turned the light back off , threatened L.M. with the weapon, and performed oral sex on her

2    against her will.  He then attempted penile penetration, but she was able to prevent penetration with her

3    hands.  She subsequently felt a fluid type substance on her hand, and Mendoza then zipped up his pants

4    and left the room.  L.M. ultimately had succeeded in kicking the weapon under the bed during the

5    assault, and Mendoza did not retrieve it when he left.  After Mendoza left, L.M. immediately got up,

6    hid the weapon, ran to a different trailer where her mother was, and called the police.  Her account to

7    the 911 dispatcher was consistent with the foregoing.  The police found a BB handgun where L.M. told

8    them the weapon was.  During the questioning of Mendoza, he referred to a shotgun in his truck, which

9    proved to be an illegal short-barreled shotgun.  Later forensic examination of L.M.'s clothing and swabs

10   taken from her body found the presence of semen, which matched Mendoza's DNA.[5]

11        In the written guilty plea agreement, which was translated for petitioner, Mendoza

12   acknowledged that  by entering a plea, he was waiving "[t]he right to appeal the conviction, with the

13   assistance of an attorney, either appointed or retained, unless the appeal is based upon reasonable

14   constitutional, jurisdictional or other grounds that challenge the legality of the proceedings and except

15   as otherwise provided in subsection 3 of NRS 174.035."[6]  During the plea colloquy, Mendoza

16   acknowledged  that he was giving up his right to appeal the conviction with the exception of certain

17   rights to appeal.[7]

18        During the plea colloquy, Mendoza stated that "I didn't have a lawyer who helped me to do this

19   well."  When the court inquired further, however, petitioner acknowledged that he had not asked

20   counsel to pursue any line of investigation or defense, such that his counsel had not refused to do

21   anything requested of him.  Petitioner did not identify anything specific that counsel had failed to do

22   that he should have done that would have countered the State's evidence on any of the charges.

23   Thereafter, at the urging of defense counsel, who had been a criminal defense practitioner for 24 years

24   at that point, the court inquired further.  The court asked Mendoza whether he wanted counsel to

25   _____

26        [5]#27, Ex. 34, at 16-20.

27        [6]#27, Ex. 33, at 7.

28        [7]#27, Ex. 34, at 10.

continue to represent him.  Mendoza did not answer the question directly multiple times, but the court persisted.  Petitioner ultimately answered the question:  "Yes, that's fine."[8]

On October 23, 2007, Mendoza was sentenced, and the judgment of conviction was filed the same date.

On Monday, November 26, 2007, the time to file a direct appeal expired with no appeal having been taken.[9]

Approximately eight months later, on or after July 21, 2008, Mendoza sent the state district court judge a letter.  Mendoza, *inter alia*, asked the court to "appoint me a lawyer to appeal my case" and to "give me the opportunity to reopen and appeal my case."[10]

The record in this matter also contains letters dated July 28, 2008, and July 31, 2008, addressed to the public defender.  The copies of the letters in the record in this matter have August 4, 2008, "received" stamps by the state district court clerk, not by the public defender's office.[11]

The letter dated July 28, 2008, states that "I would like to appeal" and that "I would like your office to assist me."  The letter further contained the following:

> . . . . Can you please review my case and write back to me, what are my chances of going through the appeal and also telling me what steps are necessary to *begin* this process.  . . . .  I'm concerned on the time allowed by the court to appeal."

#27, Ex. 39 (emphasis added).

---

[8]See #27, Ex. 33, at 14-15 & 21-23.  See also #29, Ex. 66, at 58-59 (counsel's practice experience); *id.*, at 39-40 (with reference to petitioner's claims during the plea colloquy that he might die shortly, counsel testified at the later state post-conviction evidentiary hearing that petitioner at the time voluntarily purportedly was fasting to kill himself from hunger but jail deputies reported observing him taking food from other inmates' plates).

[9]Respondents maintain that the thirty-day appeal period expired on November 22, 2007.  That day, however, was the Thanksgiving Day holiday, and the Friday following Thanksgiving is the Family Day legal holiday in Nevada.  The difference is not critical to the outcome in this case.  However, as the Court has observed in numerous past cases, counsel should consult the calendar when calculating the running of the federal limitation period.  The limitation period begins running in this context from the expiration of the time for filing a direct appeal, not mechanically from thirty days after the judgment of conviction viewed in a vacuum.

[10]#27, Ex. 38.

[11]#27, Exhs. 39-40.

1    The letter dated July 31, 2008, stated, *inter alia*, that "I would like to ask for help in begging

2    [sic] an appeal."

3    Thereafter, Mendoza sent an unaddressed communication apparently to the court that was dated

4    August 13, 2008. He asked the court to "reopen my case . . . to appeal it." Mendoza also submitted a

5    form styled as a designation of record of appeal also dated August 13, 2008.[12]

6    The state court clerk received these papers and docketed the appeal on or about August 21, 2008,

7    identifying Mendoza as proceeding in proper person on the appeal in the case appeal statement.[13]

8    Approximately two weeks later, on September 5, 2008, defense counsel filed a formal motion

9    to withdraw as counsel, with the certificate of service reflecting service only on the district attorney's

10   office. The motion was granted on September 26, 2008.[14]

11   On September 15, 2008, the state supreme court dismissed the appeal for lack of jurisdiction due

12   to its untimeliness, with the copy of the order being sent to Mendoza in proper person.[15]

13   On or about October 16, 2008, petitioner allegedly sent a letter to the state district court asking

14   the court to appoint counsel. The letter stated: "I will be filing a writ of habeas corpus post conviction

15   with the help of a friend."[16]

16   On or about October 31, 2008, petitioner mailed a proper person state post-conviction petition

17   that the state district court clerk received and filed on November 7, 2008. The state petition was both

18   mailed and filed more than one year after the October 23, 2007, judgment of conviction. The state

19   district court appointed counsel for petitioner on November 17, 2008. The State moved to dismiss the

20   petition as untimely on January 28, 2009. On March 18, 2009, the state district court ordered an

21   evidentiary hearing for June 25, 2009. #28, Exhs. 50, 53, 56 & 63.

22   / / / /

23   _____

24   [12]#27, Exhs. 41-42.

25   [13]See #27, Exhs. 42-43.

26   [14]#27, Ex. 44; #28, Ex. 47.

27   [15]#27, Ex. 45.

28   [16]#28, Ex. 49. The copy of the letter in the federal record does not reflect a "received" stamp.

-5-

At the outset of the June 25, 2009, evidentiary hearing, the district court informed the parties that the court would be denying the motion to dismiss the petition for untimeliness. The court stated, *inter alia*, that "I'm going to deny it based upon the relative shortness – relative shortness of the time between when he could have filed – or should have filed and when he did file, together with the time spent with the case on its original appeal."[17] The hearing accordingly proceeded on the merits of petitioner's claims. The petition, as supplemented by counsel, included claims: (a) that defense counsel did not inform petitioner of his right to appeal or consult with him regarding an appeal; and (b) that counsel did not investigate the case and bring forth exculpatory evidence, including exculpatory evidence that the DNA test was negative.[18]

At the hearing, Mendoza testified that he did not ask counsel to file an appeal, that counsel did not discuss an appeal with him, that he did not talk with counsel after he was sentenced, that he did not receive any correspondence from counsel after the sentencing, and that he did not send any correspondence to counsel or otherwise seek to contact counsel after the sentencing.[19]

There was no testimony that Mendoza asked counsel to file an appeal, state post-conviction proceeding, or federal habeas petition. There was no testimony that counsel told Mendoza that he would be filing an appeal, state post-conviction proceeding, or federal habeas petition. There was no evidence presented in any way establishing a basis for a reasonable belief by Mendoza that counsel was pursuing an appeal, state post-conviction proceeding, or federal habeas petition on his behalf.

There further was no testimony that Mendoza even subjectively believed that counsel was pursuing an appeal, state post-conviction proceeding, or federal habeas petition after his sentencing. The letters that Mendoza sent to the state district court in and after July 2008 instead reflected Mendoza's desire to "begin" an appeal. Those letters belied any claim that Mendoza previously had had a subjective belief that counsel was pursuing an appeal or other relief following his sentencing. #27, Exhs. 39-40.

---

[17]#29, Ex. 66, at 3-4 (per lower right corner page numbering, not electronic docket page numbering).

[18]#28, Ex. 50, at 8-10 (per bottom center page numbering); *id.*, Ex. 61, at 3-6 (bottom center page numbering).

[19]#29, Ex. 66, at 19-20 & 28-30.

Defense counsel testified that he discussed with petitioner the limited appeal rights following a plea in connection with discussion of the plea agreement.  He testified that he did not discuss an appeal with Mendoza after sentencing or otherwise have any communications with Mendoza prior to receiving the July 2008 letters forwarded from the district court.  He testified that he did not see any meritorious ground for filing an appeal following upon the plea agreement.[20]

The district court, in its oral and written reasons, found, *inter alia*, that the petition was untimely but that petitioner had good cause for the delay, that Mendoza's claim that he was not advised of his right to appeal was repelled by the record, that Mendoza did not make a timely request of counsel to file an appeal, and that an appeal would have been fruitless.[21]

The Supreme Court of Nevada affirmed the denial of the petition on the basis that the petition was untimely.  The state supreme court held as follows in pertinent part:

> . . . .  At an evidentiary hearing, the district court found good cause [for the failure to file the petition timely] but, in finding appellant's claims to be meritless, found no prejudice.  We conclude that the district court erred in finding good cause, but we agree that appellant did not demonstrate prejudice.
>
> Appellant failed to demonstrate that any impediment external to the defense prevented him from filing his claims within the time limits of NRS 34.726(1).  See Hathaway v. State, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003).  In addition, appellant's claim that his petition was only filed two weeks late did not demonstrate good cause because the [a]pplication of the statutory procedural default rules to post-conviction habeas petitions is mandatory."  State v. Dist. Ct. (Riker), 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005).  Also, appellant's claim that he lacked counsel after the entry of his judgment of conviction did not demonstrate good cause because (1) it is in part belied by the record as trial counsel did not withdraw until September 2008 and (2) appellant was not entitled to postconviction counsel, see NRS 34.750; McKague v. Warden, 112 Nev. 159, 164-65, 912 P.2d 255, 258 (1996).
>
> Moreover, appellant failed to demonstrate prejudice as his claims lack merit.  . . . .  Finally, appellant's claim of appeal deprivation lacks merit as he did not demonstrate that counsel should have known he would want to appeal or that he requested a notice of appeal within the statutory time limit.  See Roe v. Flores-Ortega, 528 U.S. 470, 479-80 (2000); Thomas v. State, 115 Nev. 148, 150-51, 979 P.2d 222, 223-24 (1999).

_____

[20]#29, Ex. 66, 48-51 & 66-67.

[21]#29, Ex. 66, at 86-87; *id.*, Ex. 69, at 2.

1
2

>Because appellant's claims were procedurally barred and he failed to demonstrate good cause and prejudice, we conclude that the district court did not err in denying his petition. [FN3]

3
4

>[FN3] See Kraemer v. Kraemer, 79 Nev. 287, 291, 382 P.2d 394, 396 (1963) (declining to reverse correct result simply because it was based on the wrong reason).

5   #30, Ex. 86, at 2-3.

6          The state supreme court's order of affirmance was filed on June 10, 2010, and the remittitur in

7   the untimely state post-conviction proceeding issued on July 8, 2010.

8          Petitioner mailed the federal petition for filing on or about September 2, 2010.

9                                          ***Governing Law***

10          Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in the context presented

11   here, a federal habeas petition must be filed within one year after "the date on which the judgment [of

12   conviction] became final by the conclusion of direct review or the expiration of the time for seeking

13   such review."  28 U.S.C. § 2244(d)(1)(A).  Under § 2244(d)(2), "[t]he time during which a properly

14   filed application for State post-conviction or other collateral review with respect to the pertinent

15   judgment or claim is pending shall not be counted toward any period of limitation under this

16   subsection."  28 U.S.C. § 2244(d)(2).  However, an untimely state petition is not properly filed for

17   purposes of § 2244(d)(2) and thus does not statutorily toll the running of the federal limitation period.

18    *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

19          Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing

20   his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

21   timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 1085 (2009) (quoting prior authority).[22]  Equitable

22

23          [22]The Court has proceeded on the assumption that the statement of the standard in the text is substantially
24   equivalent to jurisprudential statements instead of framing the standard as one of whether the extraordinary circumstance
     "made it impossible" to meet the federal filing deadline.  Many Ninth Circuit – but not Supreme Court – formulations of
25   the equitable tolling standard refer to the extraordinary circumstance making it "impossible" to meet the filing deadline.
     The Ninth Circuit has clarified, however, that "[d]espite the unequivocal "impossibility" language in our standard, we
26   have not insisted that it be literally impossible for a petitioner to file a federal habeas petition on time as a condition of
     granting equitable tolling."  *Harris v. Carter*, 515 F.3d 1051, 1054 n.5 (9th Cir. 2008).  Rather, the court of appeals has
27   "granted equitable tolling in circumstances where it would have technically been possible for a prisoner to file a petition,
     but a prisoner would have likely been unable to do so."  *Id*.  *See also Bills v. Clark*, 628 F.3d 1092, 1100 n.3 (9th Cir.
28                                                                                                (continued...)

1    tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the

2    threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule,"

3    *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d

4    1005, 1010 (7th Cir.2000)).  The petitioner ultimately has the burden of proof on this "extraordinary

5    exclusion."  292 F.3d at 1065.  He accordingly must demonstrate a causal relationship between the

6    extraordinary circumstance and the lateness of his filing.  *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th

7    Cir. 2003).  *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

8                                            *Discussion*

9    **Calculation of the Federal Limitation Period**

10                In the present case, under § 2244(d)(1)(A), the federal limitation period began running after the

11   expiration of the time for filing a direct appeal on Monday, November 26, 2007.[23]  The untimely state

12   petition did not statutorily toll the limitation period.  Accordingly, absent delayed accrual or other

13   tolling, the limitation period expired one year later on Wednesday, November 26, 2008.  The federal

14   petition was not mailed for filing until nearly two years later, on or about September 2, 2010.  The

15   federal petition therefore is untimely on its face.

16   **Equitable Tolling**

17                Petitioner contends that he is entitled to equitable tolling, *inter alia*, because: (a) defense counsel

18   did not consult with him regarding his direct appeal and post-conviction rights and accordingly

19

20        [22](...continued)

21   2010)(contrasting language); *Roberts v. Marshall*, 627 F.3d 768, 771 n.5 (9th Cir. 2010), *cert. denied,* 132 S.Ct. 286
     (2011)(also suggesting that there may be no substantive difference in the different language used).  There may well be

22   nothing more than semantics distinguishing "standing in the way of and preventing a timely filing" from "making it
     impossible to file timely."  In any event, the Court has not required petitioner to show herein that an extraordinary

23   circumstance literally made it impossible for him to file a timely petition, as opposed to instead being a substantial
     impediment standing in the way of and preventing a timely filing.

24                Similarly, the Court has proceeded on the premise that statements in Ninth Circuit opinions referring to

25   "external forces" do not exhaust the types of circumstances that can give rise to equitable tolling.  *Cf. Miles v. Prunty*,
     187 F.3d 1104, 1107 (9th Cir. 1999)(citing prior cases for an "external forces" standard despite the cited cases not

26   including such language).  Given that, *e.g.*, a mental impairment can provide a basis for equitable tolling under
     controlling Ninth Circuit law, *see Bills, supra*, it would appear that the potential bases for equitable tolling are not

27   limited to strictly external forces.

28                [23]See note 9, *supra.*

1   "abandoned" him; and (b) he diligently requested help from the state district court in filing a state post-

2   conviction petition before the expiration of the state limitation period; and (c) he was entitled to rely

3   upon the state district court's finding that his state petition was timely, through to the July 8, 2010,

4   issuance of the remittitur on the state post-conviction appeal.

5       Petitioner's argument confuses an attempt to prove an appeal-deprivation claim on the merits

6   and/or an attempt to establish cause for the untimely filing of a state post-conviction petition with an

7   effort instead to demonstrate that an extraordinary circumstance stood in the way of and prevented the

8   timely filing of the *federal* petition.

9       An alleged *arguendo* failure to consult properly with petitioner regarding his state direct appeal

10  rights and/or an alleged *arguendo* failure to consult properly regarding his post-conviction rights did

11  not prevent Mendoza from filing a federal habeas petition thereafter.  Any alleged *arguendo* deficiency

12  concerning a direct appeal and/or state post-conviction relief did not stand in the way of Mendoza filing

13  a federal petition.  A similar argument was rejected in  *Randle v. Crawford*, 604 F.3d 1047 (9th Cir.

14  2010):

15

16              . . . .  Randle argues that he meets this tolling requirement
        because . . . his counsel failed to perfect a timely appeal and to inform
        him of the time in which to initiate a state habeas petition . . . .

17

18              Counsel's failure to perfect an appeal simply meant that Randle
        had one year from the expiration of his time to file a notice of appeal in
        which to initiate a federal habeas action – it did not prevent him from
19      filing the petition.  Similarly, counsel's incorrect advice with respect to
        the time frame in which to file a state habeas case did not prevent Randle
20      from filing his *federal* habeas petition on time.

21  604 F.3d at 1057-58 (emphasis in original).

22       Indeed, under Mendoza's own testimony at the state post-conviction evidentiary hearing,[24] he

23  had not asked defense counsel to file a direct appeal for him, much less a state post-conviction petition

24  or, most to the point, a *federal* habeas petition.  There is absolutely nothing in the record remotely

25  giving rise to a basis for an objectively reasonable belief by Mendoza following the October 23, 2007,

26

27      _____

28  [24]Petitioner bases this argument exclusively upon the transcript from the state evidentiary hearing and other
    state court record materials, such as the letters sent to the state district court.

sentencing and judgment of conviction that defense counsel was pursuing *any* relief on his behalf, whether a direct appeal, a state post-conviction petition, or, again most to the point, a *federal* habeas petition.  Moreover, the state court record confirms that Mendoza did not even have a *subjective* belief that defense counsel was pursuing *any* relief on his behalf after the October 23, 2007, sentencing or judgment, whether a direct appeal, a state post-conviction petition, or, once again most to the point, a *federal* habeas petition.[25]  With no objectively reasonable (or even subjective) basis for believing that counsel was pursuing *any* relief on his behalf – much less federal habeas relief – after October 27, 2007, Mendoza had no basis for standing by and doing nothing following his sentencing.

Petitioner's presentation in opposition to the motion to dismiss falls short of the showing made in cases where a potentially viable basis for equitable tolling has been recognized.

Petitioner cites to the Supreme Court's decision in *Holland* .  However, in remanding for further proceedings, the Court noted the extensive record suggesting more than simple negligence by counsel:

> . . . Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

130 S.Ct. at 2564.

Similarly, in *Spitsyn*, *supra*, the attorney was hired and paid specifically to file a federal habeas petition, which needed to be filed approximately a year later.  Counsel unquestionably undertook the representation to file a federal habeas petition.  Thereafter, the attorney failed to respond to inquiries from the petitioner and his mother.  They filed a grievance with the state bar, which ultimately reprimanded the attorney.  Counsel did not contact the petitioner and his mother until after the federal filing deadline had passed, and thereafter he still delayed in returning the file.  *See* 345 F.3d at 801.

////

---

[25]See text and record citations, *supra*, at 6.

1    Here, in contrast, there is no evidence that Mendoza believed – or had a reasonable basis for

2    believing – that defense counsel was pursuing *any* relief on his behalf after October 27, 2007, much less

3    a federal habeas petition.  Mendoza had no basis for inaction on his part.

4        Petitioner notes that counsel filed a motion to withdraw in September 2008 after Mendoza filed

5    an untimely appeal without serving him with a copy of the motion.  Petitioner urges that counsel

6    "abandoned" him by not advising him regarding the untimely appeal and the state post-conviction

7    deadline.  Again, however, any *arguendo* deficiency by defense counsel – on a somewhat questionable

8    proposition that the representation in the prior criminal proceeding extended to later providing advice

9    regarding an untimely *pro se* appeal and state post-conviction relief – did not prevent Mendoza from

10   filing his *federal* habeas petition.  *Cf. Randle, supra*.  Given that Mendoza neither subjectively believed

11   nor had a reasonable basis for believing that counsel then was assisting him in seeking *any* relief, much

12   less in the filing of a federal petition, a failure to serve him with a copy of the formal motion to withdraw

13   in the state proceedings did not stand in the way of his seeking federal habeas relief.[26]

14       Petitioner further points to the state supreme court's statement "that appellant's claim that he

15   lacked counsel after the entry of his judgment of conviction did not demonstrate good cause because (1)

16   it is in part belied by the record as trial counsel did not withdraw until September 2008 and (2) appellant

17   was not entitled to postconviction counsel . . . ."[27]  The issue here – again – is whether an extraordinary

18   circumstance stood in the way of and prevented the filing of a *federal* petition.  Defense counsel still

19   could be shown as counsel of record in the state proceedings to this day and that circumstance would not

20   stand in the way of Mendoza filing a federal petition at any point between November 26, 2007, and

21   November 26, 2008.  Defense counsel was not appointed to file a federal habeas petition for petitioner;

22   Mendoza had no subjective belief that counsel was pursuing federal habeas relief on his behalf; Mendoza

23   in any event had no objectively reasonable basis for believing that counsel was pursuing federal habeas

25   [26]Petitioner pejoratively refers to defense counsel's alleged "shabby treatment" of Mendoza.  Regardless of
26   whether the Court were to agree or disagree with this characterization, the standard for equitable tolling is not whether
     counsel treated the petitioner "shabbily."  Rather, the standard is whether an extraordinary circumstance stood in the way
27   of and prevented the filing of a federal petition.  Counsel's treatment of petitioner did not constitute an extraordinary
     circumstance that stood in the way of and prevented the filing of a federal petition.

28       [27]#30, Ex. 86, at 2.

-12-

1    relief on his behalf; and the record is bereft of any action steps taken by Mendoza seeking to have

2    counsel file a federal habeas petition on his behalf.  What the state court said about representation in the

3    state proceedings does not establish the existence of an impediment to filing a federal petition.

4         Petitioner accordingly has failed to establish a basis for equitable tolling of the federal limitation

5    period based upon an alleged deficiency by his defense counsel from the original state criminal

6    proceedings vis-à-vis consulting with him regarding a direct appeal or post-conviction proceedings.[28]

7

8         [28]The state courts found that Mendoza's claim that he was not advised of his right to appeal was repelled by the
     record and further that he did not request counsel to file an appeal within the time limit for doing so.  These factual
9    findings were well supported by the state court record and are entitled to a presumption of correctness under 28 U.S.C. §
     2254(e)(1).  Defense counsel testified at the state post-conviction evidentiary hearing that he advised petitioner of his
10   limited appeal rights when discussing the plea deal.  Mendoza further was advised in the plea agreement and during the
     plea colloquy of the limited appeal rights available after a plea.  Petitioner's later assertion that he did not understand
11   what was going on during the translated colloquy is not corroborated by the interactive exchange reflected in the
     transcript of the plea colloquy, particularly taking into account his burden in seeking to overcome a state court factual
12   finding under  § 2254(e)(1).  And, as noted in the text, Mendoza's own evidentiary hearing testimony confirmed that he
     did not ask counsel to file an appeal at the time of the October 23, 2007, sentencing and judgment of conviction.
13
          Petitioner maintains that defense counsel would have known that "the" proper way to challenge the
14   voluntariness of a plea in Nevada is to file a state post-conviction petition.  He draws from this premise the not
     necessarily compelled conclusion that counsel therefore had a duty to advise Mendoza in August 2008 regarding post-
15   conviction relief after he filed an untimely *pro se* direct appeal.  The premise is not entirely accurate.  The voluntariness
     of a plea in fact can be challenged under Nevada practice under either a post-conviction petition *or* a motion to withdraw
16   plea, with a right to appeal thereafter to the state supreme court.  *See, e.g. , Hart v. State*, 116 Nev. 558, 561-64, 1 P.3d
     969, 971-73 (2000).  Nor, as noted, is the conclusion drawn from the premise a compelled one.
17
          In all events, however, the salient point is that any such *arguendo* alleged deficiency by counsel in failing to
18   consult with Mendoza regarding a direct appeal and/or state post-conviction relief did not stand in the way of and
     prevent the filing of a *federal* petition.  There is no authority establishing that a petitioner is entitled to equitable tolling
19   unless and until defense counsel in the original criminal proceeding specifically advises him regarding *federal* habeas
     relief.  Petitioner's premise that defense counsel in the original criminal proceeding was deficient with respect to
20   advising him regarding *state* appellate and collateral review does not provide a basis for equitable tolling of the *federal*
     limitation period.  *Cf. Randle, supra.*
21
          The decision in *Maples v. Thomas*, 132 S.Ct. 912 (2012), is far afield from this case.  In *Maples*, the Court held
22   that cause existed for the procedural default of the capital defendant's claims.  The Court held that cause existed because
     petitioner's large-firm *pro bono* state post-conviction counsel abandoned him by failing to provide notice of their change
23   of address after leaving the firm, resulting in his failure to timely appeal the denial of his state post-conviction petition.

24        In this case, in contrast, Mendoza had neither a subjective belief nor an objectively reasonable basis for
     believing that defense counsel was pursuing relief on his behalf after entry of judgment on October 23, 2007.  While the
25   Federal Public Defender has sought to characterize a wide array of perceived deficiencies as "abandonment" since
     *Maples*, the decision has nowhere near the reach sought.  Here, counsel negotiated a plea deal that petitioner accepted
26   during a translated colloquy; petitioner much later alleged that counsel did not consult with him adequately regarding his

27                                                                                          (continued...)

28

1     Petitioner further contends that  he is entitled to equitable tolling because he diligently requested

2   help from the state district court in filing a state post-conviction petition before the expiration of the state

3   limitation period.  He refers to the letters that he sent to the state district court in late July 2008 asking

4   for an opportunity to reopen and appeal his case.  He also refers to a letter dated October 16, 2008, in

5   which he asks the court to appoint counsel and states that "I will be filing a writ of habeas corpus post

6   conviction with the help of a friend."[29]  He maintains that he had only 40 days to prepare the state

7   petition because the state supreme court did not dismiss his untimely appeal until September 15, 2008.

8     Here, too, petitioner confuses an attempt to establish cause for the untimely filing of a state post-

9   conviction petition with an effort instead to demonstrate that an extraordinary circumstance stood in the

10   way of and prevented the timely filing of the *federal* petition.

11     A petitioner's lay status and unfamiliarity with the law does not constitute a basis for equitable

12   tolling of the federal limitation period.  *E.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

13   Petitioner cites no controlling precedent establishing a constitutional right to the pre-filing appointment

14   of counsel in a noncapital state post-conviction or federal habeas case to assist a petitioner in preparing

15   a petition.  Nor can or will a state or federal court itself provide legal advice or assistance to a petitioner

16   and/or help a petitioner prepare a petition.

17     As a point of comparison, in federal court, this Court does not appoint counsel to prepare a

18   petition in response to letter requests.  The Court further does not itself provide legal advice or assistance

19   to inmates, whether in response to a letter request or otherwise.  Sending a letter to a federal district court

20   requesting pre-filing appointment of counsel, which is not available, will will not equitably toll the

21   federal limitation period.  Sending a letter to a federal district court requesting advice or assistance from

22   the court regarding a challenge to a conviction, which also is not available, will not equitably toll the

23

24   _____

      [28](...continued)

25   rights to seek review after the plea; there indisputably was no instruction to seek such review at the time that judgment
      was entered; and counsel thereafter did not pursue representation of petitioner in what appeared to be a closed file with

26   an expired time period for filing a direct appeal and in a situation where defense counsel should not represent the former
      client in post-conviction proceedings.  Whatever that scenario may reflect, it does not constitute "abandonment" under

27   either *Maples* or *Holland*.

28     [29]#28, Ex. 49.

-14-

1  federal limitation period.  Again, an inmate's lay status does not constitute a basis for equitable tolling.

2  *Rasberry, supra.*  The rule is not that an inmate's lay status does not constitute a basis for equitable

3  tolling "unless he asks the court for assistance."  Sending a letter to a federal district court seeking

4  assistance to file a federal petition – in and of itself – does not give rise to a viable basis for equitable

5  tolling.  The onus is on the lay inmate to timely file a *petition*, not merely submit letters to a court

6  requesting advice or help regarding a petition, particularly letters requesting assistance that are not sent

7  until shortly before the expiration of a limitation period.

8        It follows with even greater force that requesting appointment of counsel or other advice or

9  assistance from a *state* district court regarding the filing of a *state* petition does not provide a basis for

10  equitable tolling of the limitation period to file a *federal* petition.  *Cf. Randle, supra*.  Nothing about the

11  circumstance of requesting help is-à-vis a *state* petition stood in the way of and prevented Mendoza from

12  filing a *federal* petition.

13        Nor did the action of the Supreme Court of Nevada on petitioner's untimely appeal prevent him

14  from timely preparing and filing a petition – in any court – within the applicable limitation period.

15  Petitioner was not required to sit idly by while the untimely appeal was pending.  Given that an inmate's

16  lay status does not constitute a basis for equitable tolling, the inmate's failure to challenge his conviction

17  through a proper and timely procedural vehicle does not give rise to a viable basis for equitable tolling.

18  No action of the Supreme Court of Nevada prevented petitioner from preparing and filing a federal (or

19  state) petition prior to the dismissal of the untimely appeal on September 15, 2008, or at any other time

20  after the filing of the judgment of conviction on  October 23, 2007.

21        Petitioner further contends that he was entitled to rely upon the state district court's finding that

22  his state petition was timely, through to the July 8, 2010, issuance of the remittitur on the state post-

23  conviction appeal.  Even if the Court were to assume *arguendo* that such alleged reliance could provide

24  a viable basis for equitable tolling, the state district court did not find the petition timely until *June 25,*

25  *2009.*  The federal limitation period, absent other tolling or delayed accrual, expired on *November 26,*

26  *2008.*  Mendoza clearly could not be relying upon a June 25, 2009, finding in not timely seeking federal

27  relief by November 26, 2008.

28        / / / /

-15-

1        Moreover, given the relevant state and federal law at the time, the Court is not sanguine that a

2   Nevada petitioner ever would act reasonably in relying upon only an interlocutory state district court

3   finding of timeliness in deferring seeking federal habeas relief.  The Supreme Court of Nevada held in

4   2004 that even a stipulation by the State in the district court to the timeliness of a petition could not

5   override the mandatory timeliness rules under state law.  *See Sullivan v. State*, 120 Nev. 537, 96 P.3d

6   761 (2004).  And the United States Supreme Court held in 2005 in *Pace, supra*, that an untimely state

7   petition does not statutorily toll the federal limitation period.  The necessary underlying premise of the

8   present argument by petitioner is that Mendoza made a calculated decision to defer seeking federal

9   habeas relief in reliance on the state district court's finding.  Under the governing state and federal law

10  in force at the time, such an alleged calculated decision to rely on the interlocutory district court decision

11  in deferring federal habeas relief would not have been a reasonable one.  The Court notes in this regard

12  that Mendoza was represented in the state post-conviction proceedings on and after November 17, 2008,

13  including at the time that the state district court made the June 25, 2009, finding in open court with both

14  Mendoza and state post-conviction counsel present.

15       The state district court's June 25, 2009, finding thus could not in any sense stand in the way of

16  and prevent a timely federal filing at any time, including on or before November 26, 2008.

17       Finally, petitioner's mailing of a state petition on or about October 31, 2008, demonstrates his

18  ability to file a federal petition prior to the expiration of the federal limitation period on November 26,

19  2008.  If any alleged obstacles *arguendo* had stood in the way of filing a federal petition prior to that

20  point, Mendoza obviously had overcome them and succeeded in filing a petition seeking post-conviction

21  relief.  Petitioner nonetheless seeks to shift the focus away from his filing of a petition within the federal

22  limitation period.  He urges that his federal petition would have been timely if only defense counsel had

23  not abandoned him and caused the state petition to be untimely.  The Court is not necessarily persuaded

24  as to the initial premise that defense counsel from the original state criminal proceedings caused the

25  untimely filing of the state petition.  However, in the final analysis, as stated repeatedly herein, petitioner

26  must demonstrate that an extraordinary circumstance stood in the way of and prevented the timely filing

27  of the *federal* petition.  Petitioner's strained effort to bootstrap a state timeliness issue into a federal

28  timeliness issue does not overcome the fact that under the *relevant* legal standard, he has not established

that an extraordinary circumstance stood in the way of and prevented him from filing a timely federal petition on or before November 26, 2008.

Petitioner accordingly has failed to establish a potentially viable basis for equitable tolling prior to the expiration of the federal limitation period on November 26, 2008.[30]

////

---

[30]Petitioner makes conclusory assertions in the opposition to the motion to dismiss that he does not speak, read or write English and that he completed only the fourth grade in Mexico. The only purported record support, if any, given for these assertions are similar self-serving statements by Mendoza himself in state court filings. See #35, at 2, 6 &13. The Court notes that at the June 25, 2009, state court evidentiary hearing, Mendoza responded to questions multiple times before the questions were translated by the interpreter. See #29, Ex. 66, at 21. A unsupported statement that Mendoza has no English language skills at the very least is an overstatement belied by the record.

The conclusory assertions that petitioner possesses no English language skills in any event fall far short of the showing required under Ninth Circuit precedent to demonstrate that an alleged inability to communicate in English provided a potential basis for equitable tolling. Showing that a petitioner *arguendo* had *no* English language skills and that there were no Spanish-language legal texts of substance in the prison law library does not carry a petitioner's burden of proof on equitable tolling under controlling Ninth Circuit precedent. Rather, under *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006), "a non-English-speaking petitioner seeking equitable tolling must, *at a minimum*, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language *or translation assistance* from *an inmate*, library personnel, *or other source*." 449 F.3d at 1170 (emphasis added). Mendoza has not even begun to attempt to shoulder his burden under *Mendoza*.

Petitioner further has failed to demonstrate by his self-reported alleged limited educational history that his alleged limited educational level constituted an extraordinary circumstance that stood in the way of and prevented the filing of a federal petition. Under Ninth Circuit law, a petitioner seeking to establish equitable tolling based upon an actual mental impairment must demonstrate, *inter alia*, that the petitioner's mental condition rendered him either unable to rationally or factually to personally understand the need to timely file or unable to prepare a habeas petition and effectuate its filing. *E.g.*, *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) Petitioner's skeletal references to only having a limited formal education do not remotely approach such a circumstance. Petitioner cites no apposite authority establishing that limited formal education in and of itself constitutes an extraordinary circumstance providing a basis for equitable tolling. A substantial portion of federal habeas petitions filed are filed by lay petitioners with only limited formal education, not infrequently primarily Spanish-speaking petitioners with limited formal education.

Given that petitioner has failed to demonstrate a viable basis for equitable tolling prior to November 26, 2008, the Court accordingly has no occasion to reach petitioner's additional arguments concerning circumstances after that date. The Court notes that the Federal Public Defender has not provided – whether in this case or any other case – apposite case authority establishing a basis for equitable tolling of the time to file a petition *after* the petition is filed. Even if such *post*-filing equitable tolling *arguendo* were available (separate and apart from delayed accrual of a claim under the discovery rule in § 2244(d)(1)(D), discussed *infra*), the appointment of federal habeas counsel does not equate to a finding that circumstances warranting equitable tolling were present, at any time. Nor would such *arguendo* post-filing equitable tolling extend for so long as federal habeas counsel allegedly needed to prepare and file an amended petition. Again, mere lay status is not the equivalent of a viable basis for equitable tolling. The governing rule thus is not that the running of the limitation period is equitably tolled unless and until petitioner has federal habeas counsel who has fully investigated the file. In all events, the federal limitation period expired in this case on November 26, 2008.

-17-

***Delayed Accrual Under § 2244(d)(1)(D)***

Petitioner additionally contends that delayed accrual is applicable under 28 U.S.C. § 2244(d)(1)(D), which provides that "[t]he limitation period shall run from . . . the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner contends that the factual predicate for Ground 2 could not have been discovered prior to review of the file by federal habeas counsel. In Ground 2, petitioner alleges that he was denied effective assistance of counsel because defense counsel failed to obtain and analyze prior to the plea DNA laboratory data, notes and related information and challenge the reliability of the positive DNA results. Petitioner contends that the factual predicate of this claim could not have been discovered earlier through reasonable diligence because he did not have the expertise to prove the prejudice element of the claim and state post-conviction counsel did not engage an expert to develop the factual predicate to establish prejudice. Petitioner urges that he could not discover the factual predicate for the claim before federal habeas counsel retained an expert molecular biologist.

The Court is not persuaded. As alleged, federal Ground 2 is based in pertinent part upon the following factual predicates: (a) the 2007 reports finding the presence of, *inter alia*, semen on multiple items of evidence and reporting that the DNA matched Mendoza's DNA;[31] (b) 1998 and 2009 standards[32] establishing quality control standards for the collection and testing of DNA evidence; and (c) the allegation that, on information and belief, review of materials underlying the 2007 reports (and sought in federal discovery) will demonstrate the unreliability of the State's DNA evidence. The factual predicates in (a) and (b) were available to petitioner,[33] who was represented in the state post-conviction proceedings, through the exercise of due diligence well in advance of a year prior to the September 2, 2010, constructive filing of the federal petition. *Inter alia*, the DNA analysis report actually was

---

[31] #24, at 16; #26, Exhs. 13, 15 & 16.

[32] It would be subject to some question as to whether defense counsel could be found to have provided ineffective assistance at the time of Mendoza's 2007 plea based upon a failure to take into account quality control standards published in 2008 and adopted in 2009. See also note 33, *infra*.

[33] While the 2009 standards carried a July 1, 2009, effective date, the exhibit in the record is from an October 2008 publication. See #20, Ex. 91.

1  introduced into evidence at the June 25, 2009, state court evidentiary hearing and further was read to

2  Mendoza in its entirety in Spanish.  The still-speculative allegation in (c) that on information and belief

3  review of further materials would demonstrate the unreliability of the DNA evidence in (a) under the

4  1998 and/or 2009 standards in (b) could have been made at any time, even by a litigant represented by

5  an attorney without a degree in molecular biology.

6        The limitation period begins to run on a claim under § 2244(d)(1)(D) when the factual predicate

7  of the claim could have been discovered through the exercise of due diligence, not when it actually was

8  discovered.  *E.g., Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir.), *cert. denied*, 133 S.Ct. 769 (2012).

9  Significantly, the limitation period begins to run when the petitioner knows, or through diligence could

10  discover, the important facts, not when the petitioner recognizes their legal significance.  *Id.*; *Hasan v.

11  Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001).  In the present case, petitioner relies in Ground 2 upon

12  factual predicates that either were actually known or that could have been discovered through due

13  diligence well before a year before the filing of the federal petition and a legal argument based upon

14  speculation that could have been made at any time.  *Cf. Ford*, 683 F.3d at 1236 (agreeing with the

15  magistrate judge's observation that the petitioner "relies on a factual predicate and speculative inferences

16  therefrom which have been present since the trial itself . . . whether or not they were recognized by

17  anyone . . . ").  In the final analysis, federal habeas counsel simply has divined and pursued a potential

18  legal argument that state post-conviction counsel did not recognize and pursue on essentially the same

19  record and potentially available materials.  The delayed accrual rule in § 2244(d)(1)(D) does not state

20  a "backdoor" rule of ineffective assistance of state post-conviction counsel under which a petitioner

21  "discovers" a "factual predicate" any time that federal habeas counsel recognizes the prospect of a claim

22  that state post-conviction counsel did not see or pursue.  Again, one did not have to have a degree in

23  molecular biology to consider trying to establish a claim that defense counsel was ineffective for failing

24  to challenge the reliability of the DNA collection and testing procedures under published criteria.

25        Delayed accrual under § 2244(d)(1)(D)  therefore is not applicable in this case.[34]

26

27        _____

      [34]Any such *arguendo* delayed accrual would apply only to Ground 2.  Petitioner points to out of circuit

28  authority supporting the proposition that such delayed accrual would apply to an entire petition.  He acknowledges,

                                                                                (continued...)

                                        -19-

1    ***Motion for Discovery***

2           As discussed at greater length in the preceding section, petitioner alleges in Ground 2 that he was

3    denied effective assistance of counsel because defense counsel failed to obtain and analyze prior to the

4    plea DNA laboratory data, notes and related information and challenge the reliability of the positive

5    DNA results.  In the motion for leave to conduct discovery, petitioner seeks to pursue discovery of chain

6    of custody, lab notes and related materials "in order to adequately and completely present such claim in

7    the amended petition."  #25, at 5.  That is, petitioner seeks to obtain these materials to substantiate the

8    allegation that "on information and belief" the materials would provide a basis for challenging the

9    reliability of the positive DNA results finding that the DNA in the semen recovered  matched Mendoza's

10   DNA.

11          The motion for leave to conduct discovery will be denied as moot because the entire petition,

12   including Ground 2, is untimely.

13          Petitioner has sought the discovery in order to present Ground 2 on the merits, not to establish

14   its timeliness.  He has presented no argument in the briefing that the discovery is needed to establish the

15   timeliness of the ground.  Any such argument in any event would be without merit.  Petitioner in fact

16   has presented the ground in the amended petition without the discovery.  Moreover, as discussed in the

17

18   _____

19          [34](...continued)
     however, that the Ninth Circuit has held to the contrary.  *See,e.g., Mardesich v. Cate*, 668 F.3d 1164, 1170-71 (9th Cir.

20   2012).

21          Even if Ground 2 were timely under  § 2244(d)(1)(D), the claim clearly is unexhausted.  The conclusory claim
     on state post-conviction review that counsel "failed to investigate" did not fairly present the detailed claim of failing

22   specifically to investigate and challenge the reliability of the DNA evidence now alleged in Ground 2.  See #28, Ex. 61,
     at 3, lines 15-17; & 5, lines 7-11.  The similarly conclusory generic statements made in the state post-conviction appeal

23   briefing also did not fairly present the claim in Ground 2.  See #29, Ex. 81, at 8.  Petitioner's argument that such generic
     statements "can be reasonably read" to encompass the specific claim in Ground 2 does not apply a standard applicable

24   under the governing law.  Such generic statements "could be reasonably read" to encompass just about any claim
     imaginable, and thus fairly presented no specific claim.  Moreover, petitioner alleged in the state petition that the DNA

25   test result was an exculpatory *negative* result, not that the test result was a positive result that nonetheless was unreliable.
     #28, Ex. 50, at 10(bottom center page numbering).  Nothing in petitioner's state presentation fairly alerted the state

26   courts that petitioner was seeking relief based on a claim that defense counsel was ineffective for failing to investigate
     and challenge the reliability of the procedures for collecting and testing the DNA evidence.

27
            Accordingly, even if Ground 2 *arguendo* were timely, the Court then would be presented with a petition where
28   the only timely claim was unexhausted.

-20-

preceding section, the factual predicates for the ground were available to petitioner and could have been discovered through the exercise of due diligence more than a year prior to the filing of the federal petition.  Federal habeas counsel simply has pursued a legal claim that was available to the represented petitioner in the state post-conviction proceedings but which he did not pursue.  He instead presented a claim that the DNA results were negative, which claim clearly was belied by the record.

Nor has petitioner sought the discovery in order to seek to establish actual innocence in an effort to overcome the untimeliness of the petition.  Petitioner made no argument in the briefing on the motion to dismiss seeking to overcome the untimeliness of the petition on a showing of actual innocence.  Petitioner made no argument in the briefing on the motion for discovery maintaining that the discovery sought was needed to substantiate such a claim of actual innocence.

Any such argument in any event also would have been without merit.  In order to satisfy the actual innocence gateway, a petitioner must come forward with new reliable evidence that was not presented at trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  *See Schlup v. Delo*, 513 U.S. 298 (1995).  When a petitioner seeks to demonstrate actual innocence in a case entered pursuant to a plea, he must demonstrate actual innocence not only as to the specific charge for which he stands convicted, but also as to any other more serious charges that were dismissed pursuant to the plea deal.  *See Bousley v. United States*, 523 U.S. 614 (1998).  Here, even if petitioner *arguendo* were able to present an expert analysis challenging the reliability of the DNA evidence, a jury still would have before it the testimony of the victim.  In such a circumstance, petitioner would not be able to satisfy the *Schlup* standard and demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt based upon the victim's testimony.  His own self-serving claim of innocence indisputably would not satisfy the *Schlup* standard.[35]

---

[35]Petitioner has referred repeatedly in the briefing to his claims of innocence.  However, during the plea colloquy, petitioner maintained his innocence but he acknowledged that the State would be able to prove its case on the more serious charges as to which he was avoiding trial by virtue of the plea.  #27, Ex. 34, at 4-8, 10-15 & 18-21.  Prior to his plea, Mendoza sent letters to the justice court including a letter that stated that the underage girl had taken advantage of him.  At the state post-conviction evidentiary hearing, Mendoza acknowledged signing the letter, but he

(continued...)

1          Pursuit of merits discovery on the untimely petition, even if *arguendo* otherwise appropriate

2   under the governing law, accordingly would be pointless.  The motion for leave to conduct discovery

3   therefore will be denied.

4          IT THEREFORE IS ORDERED that the respondents' motion (#33) to dismiss is GRANTED

5   and that the petition, as amended, shall be DISMISSED with prejudice as time-barred.[36]

6          IT FURTHER IS ORDERED that petitioner's motion (#25) for leave to conduct discovery is

7   DENIED.

8          IT FURTHER IS ORDERED that a certificate of appealability is DENIED.  Jurists of reason

9   would not find it debatable whether the district court was correct in its dismissal of the petition as time-

10  barred.  *Inter alia*, defense counsel's purported "abandonment" of petitioner following the plea with

11  respect to a direct appeal and state post-conviction relief did not stand in the way of petitioner filing a

12  federal petition.   Under petitioner's state court evidentiary hearing testimony, he clearly was not

13  operating under even a subjective belief that defense counsel was pursuing a direct appeal or state post-

14  conviction relief on his behalf after his guilty plea, much less a federal habeas petition.  **See text, *supra*,**

15  **at 9-13.**  Petitioner filed a state petition before the federal limitation period expired.  His efforts to

16

17  _____

      [35](...continued)

18  maintained that that is not what the letter had said in Spanish when he had a notary translate it into English for him.  #27,
    Ex. 34, at 18-19; #29, Ex. 66, at 25-28.   Defense counsel also testified at the hearing – after confirming the waiver of

19  the attorney-client privilege -- that Mendoza similarly had wanted to pursue a purported defense that the underage girl
    had taken advantage of him.  #29, Ex. 66, at 36-37 & 43.  The Court additionally notes that Mendoza claimed in his

20  state court evidentiary hearing testimony that defense counsel -- a criminal defense practitioner then with 24 years of
    experience -- "told me that if I didn't plead guilty, that the judge was going to give me more time because he was going

21  to lose a million dollars."  *Id.*, at 8.  See also *id.*, at 9, 14, 18-19 & 31.  Along with the belied claim in the state petition
    that the positive DNA results had been negative, petitioner has presented allegations and testimony that, at their very

22  best, strain credulity.  In all events, the self-serving denial of guilt by a defendant facing substantial potential sentencing
    exposure does not satisfy the *Schlup* actual innocence standard.  Even if the positive DNA evidence *arguendo* were

23  completely excluded from the case, a jury could convict based on the victim's testimony.

24          Moreover, as noted earlier herein, the entry of an essentially *Alford* plea on a written guilty plea agreement

25  hardly gives rise to a potential issue as to the voluntariness of the plea, given that the very first *"Alford"* plea upheld by
    the Supreme Court *was* a *guilty* plea.  *See North Carolina v. Alford*, 400 U.S. 25 (1970).

26
      [36]The Court does not reach the remaining issues presented on the motion to dismiss, and it makes no tacit or

27  implied holding on any other potential issue in the case over and above the express holdings made in this order.  The
    request for an evidentiary hearing is denied.  Petitioner has not made a showing in opposition to the motion to dismiss of

28  factual circumstances presenting a potentially viable basis for tolling that would warrant an evidentiary hearing.

1   "bootstrap" a challenge to the state supreme court's rejection of his arguments seeking to overcome the

2   untimeliness of the state petition under state law into an argument for equitable tolling of the federal

3   limitation period do not establish a basis for equitable tolling under the relevant standard.  **See text,**

4   ***supra*, at 16-17.**  Petitioner's conclusory assertion that he has a limited education and is unable to speak

5   English falls far short of the showing required to establish a basis for equitable tolling on this account

6   under controlling Ninth Circuit law.  **See text, *supra*, at 17 n. 30.**  Petitioner's remaining arguments

7   seeking to establish equitable tolling similarly plainly are without merit.  **See text, *supra*, at 14-16.**

8   Petitioner's argument seeking to establish delayed accrual under 28 U. S. C. § 2244(d)(1)(D) is

9   unpersuasive.  Federal habeas counsel simply has pursued a legal claim that was available to the

10  represented petitioner in the state post-conviction proceedings but which he did not pursue.  **See text,**

11  ***supra*, at 18-19.**  The discovery sought further goes to the merits of Ground 2, not to the timeliness of

12  either that ground or of the petition as a whole.  **See text, *supra*, at 20-22.**

13          The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against

14  petitioner, dismissing this action with prejudice.

15          DATED this 6th day of March, 2013.

16

17

18                                          _____
                                            LARRY R. HICKS
19                                          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

-23-